JEFFREY H. WOOD,
Acting Assistant Attorney General
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief
SARAH J. SHEFFIELD, Trial Attorney
HI Bar Number 10415
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0211
Facsimile: (202) 305-0275
Email: sarah.sheffield@usdoj.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WildEarth Guardians, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CASE NO. 4:18-cv-00048-JGZ |
| v. | ) |
| | ) **MOTION TO DISMISS PLAINTIFFS'** |
| Ryan Zinke, *et al.*, | ) **AMENDED COMPLAINT** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ......................................................... 1

II.  BACKGROUND .......................................................... 2

  A.   Endangered Species Act................................................. 2

  B.   Mexican Wolf........................................................... 3

III. STANDARDS OF REVIEW ............................................ 5

IV.  ARGUMENT ............................................................. 6

  A.   Plaintiffs' Claims That Allege Violations of The ESA Should
       be Dismissed Because They Challenge Only Discretionary
       Aspects of the Plan. ................................................... 6

  B.   Plaintiffs' Claims That Allege Violations of The APA Should
       be Dismissed Because They are Unreviewable...................... 11

V.   CONCLUSION .......................................................... 15

1

# TABLE OF AUTHORITIES

2  **CASES**                                                                                                                    **PAGE**

3

4  *Bennett v. Spear*,
   520 U.S. 154 (1997)....................................................................................... 3, 7, 12

5

6  *Cascadia Wildlands v. Bureau of Indian Affairs*,
   801 F.3d 1105 (9th Cir. 2015) ...................................................................... 12

7  *Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 402 (1971)........................................................................................ 14

8

9  *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*,
   132 F. Supp. 3d 98 (D.D.C. 2015)............................................................ 12, 13

10

11  *Conservation Cong. v. Finley*,
    774 F.3d 611 (9th Cir. 2014) ........................................................................ 12

12

13  *Conservation Nw. v. Kempthorne*,
    2007 WL 1847143 (W.D. Wash. June 25, 2007) .......................................... 14

14

15  *Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*,
    531 F.3d 792 (9th Cir. 2008) .......................................................................... 3

16

17  *Ctr. for Biological Diversity v. Jewell*,
    2018 WL 1586651 (D. Ariz. Mar. 31, 2018)........................................ 7, 8, 13

18

19  *Defs. of Wildlife v. Jewell*,
    2015 WL 11182029 (D. Ariz. Sept. 30, 2015)............................ 6, 7, 9, 12

20

21  *Friends of Blackwater v. Salazar*,
    691 F.3d 428 (D.C. Cir. 2012).............................................................. 12, 13

22

23  *Friends of the Wild Swan v. Thorson*,
    260 F. Supp. 3d 1338 (D. Or. 2017) .......................................................... 7, 8

24

25  *Friends of the Wild Swan v. Thorson*,
    2017 WL 7310641 (D. Or. Jan. 5, 2017) ................................................. 8, 10

26  *Fund for Animals v. Rice*,
    85 F.3d 535 (11th Cir. 1996) ................................................................... 7, 13

27

*Gallo Cattle Co. v. U.S. Dep't of Agric.*,
  159 F.3d 1194 (9th Cir. 1998) ..................................................................... 11

*Grand Canyon Trust v. Norton*,
  2006 WL 167560 (D. Ariz. Jan 18, 2006) .............................................. passim

*Hanger v. Dep't of Labor*,
  569 F.3d 898 (9th Cir. 2009) ...................................................................... 11

*Heckler v. Cheney*,
  470 U.S. 821 (1985)..................................................................................... 14

*Kennecott Copper Corp. v. Costle*,
  572 F.2d 1349 (9th Cir. 1978) .............................................................. 7, 9, 11

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ...................................................................... 6

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977) ......................................................................... 5

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007)....................................................................................... 8

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ................................................................. 11, 12

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ................................................................ 5, 6, 9

*Strahan v. Linnon*,
  967 F. Supp. 581 (D. Mass. 1997)................................................................. 7

*Strickland v. Morton*,
  519 F.2d 467 (9th Cir. 1975) ...................................................................... 13

*Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ........................................................................ 5

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*,
  340 F.3d 969 (9th Cir. 2003) ........................................................................ 1

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ........................................................... 5

**STATUTES**

5 U.S.C. §§ 701(a) ................................................................................ 14

5 U.S.C. § 706(2) ................................................................................... 6

16 U.S.C. § 1532(15) .............................................................................. 1

16 U.S.C. § 1533 .................................................................................... 4

16 U.S.C. § 1533(a)(1) ........................................................................... 2

16 U.S.C. § 1533(b)(1)(A) ..................................................................... 10

16 U.S.C. § 1533(f) ............................................................................... 10

16 U.S.C. § 1533(f)(1) .................................................................... 3, 6, 13

16 U.S.C. § 1533(f)(1)(B) ............................................................... 5, 6, 9

16 U.S.C. § 1533(f)(4) ........................................................................... 13

16 U.S.C. § 1539(j) ................................................................................. 4

16 U.S.C. § 1540(g)(1)(C) .................................................................. 3, 7

42 U.S.C. § 7604(a)(2) ............................................................................ 7

Pub. L. No. 100-478 (1988) ................................................................... 4

**FEDERAL REGULATIONS**

41 Fed. Reg. 17,736 (Apr. 28, 1976) ..................................................... 3

63 Fed. Reg. 1752 (Jan. 12, 1998) ......................................................... 4

80 Fed. Reg. 2488 (Jan. 16, 2015) ..................................................... 3, 4

82 Fed. Reg. 29,918 (June 30, 2017) ..................................................... 4

82 Fed. Reg. 57,288 (Dec, 4, 2017) ................................................. 4, 13

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Ryan Zinke, in his official capacity as Secretary of the Department of the Interior, the Department of the Interior, Greg Sheehan, Principal Deputy Director of the U.S. Fish and Wildlife Service ("FWS"), and FWS (collectively, "Defendants") hereby move to dismiss the Amended Complaint (ECF No. 22) of WildEarth Guardians, Western Watersheds Project, New Mexico Wilderness Alliance, and the Wildlands Network Alliance (collectively, "Plaintiffs") for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**SUPPORTING MEMORANDUM**

## I.    INTRODUCTION

Plaintiffs' challenge to the 2017 Mexican Wolf Recovery Plan ("Plan")[1] should be dismissed for lack of subject-matter jurisdiction because neither the citizen suit provision of the Endangered Species Act ("ESA") nor the Administrative Procedure Act ("APA") provide a basis for jurisdiction.

In order to bring a viable claim under the narrow waiver of sovereign immunity provided in the ESA's citizen suit provision, a plaintiff must allege that the Secretary[2] failed to perform a non-discretionary duty.  The development and implementation of a recovery plan for a listed species is a non-discretionary duty, and each recovery plan

---

[1]    The Plan and supporting documents are available at https://www.fws.gov/southwest/es/mexicanwolf/planning.html (last visited May 15, 2018).  The Plan is also included as an attachment to this motion (Exhibit A).  The page numbers cited herein for the Plan and supporting documents refer to the PDF's pagination, not the Plan's pagination.

[2]    Under the ESA, "Secretary" generally refers to the Secretaries of the Interior and Commerce.  16 U.S.C. § 1532(15).  The Secretaries of the Interior and Commerce delegated their ESA responsibilities to FWS and the National Marine Fisheries Service, respectively. *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 973-74 (9th Cir. 2003).  Because the Mexican wolf is a terrestrial species, FWS and the Secretary of the Interior are the applicable entities in this case.

---

must incorporate three mandatory aspects:  site-specific management activities, recovery criteria, and estimates of costs and time required to carry out the recovery plan's goal. However, the <u>substance</u> of the recovery plan is left to the discretion of the Secretary and is thus unreviewable under the ESA.  Here, the Secretary developed and implemented a recovery plan for the Mexican wolf and incorporated the three mandatory aspects, thus satisfying the requirements of Section 4(f)(1) of the ESA.  Because Plaintiffs challenge the discretionary substance of the Plan, the ESA citizen suit provision does not provide jurisdiction for their claim.

Plaintiffs likewise cannot avail themselves of the APA to confer jurisdiction.  To seek judicial review under the APA, a plaintiff must challenge a final agency action. Here, the Plan is not final because it is a non-binding guidance document from which no legal consequences flow.

For these reasons, Defendants respectfully request that Plaintiffs' complaint be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.   BACKGROUND

### A. Endangered Species Act

Under Section 4(a) of the ESA, the Secretary is responsible for listing species as threatened or endangered.  16 U.S.C. § 1533(a)(1).  Section 4(f)(1) of the ESA directs the Secretary to develop and implement a recovery plan "for the conservation and survival of" each species listed "unless he finds that such a plan will not promote the conservation of the species."  *Id.* § 1533(f)(1).  The ESA defines "conservation" as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary."  *Id.* § 1532(3).  Section 4(f)(1) further provides that

> [t]he Secretary, in developing and implementing recovery plans, shall, to the maximum extent practicable--
> . . .
> (B) incorporate in each plan—

1
2
3
4
5
6

> (i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;
> (ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and
> (iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

7   16 U.S.C. § 1533(f)(1).

8   In relevant part, Section 11 of the ESA authorizes citizen suits "against the

9   Secretary where there is alleged a failure of the Secretary to perform any act or duty

10  under [Section 4] of this title which is not discretionary with the Secretary."  16 U.S.C. §

11  1540(g)(1)(C).  Thus, in order to raise a viable claim under this section of the ESA citizen

12  suit provision, a plaintiff must allege that the Secretary failed to perform a non-

13  discretionary duty mandated by Section 4.  *Bennett v. Spear*, 520 U.S. 154, 173 (1997);

14  *Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 809 (9th Cir. 2008).

15      **B.  Mexican Wolf**

16  Since 1976, the Mexican wolf (*Canis lupus baileyi*) has been protected as an

17  endangered species under the ESA.  41 Fed. Reg. 17,736 (Apr. 28, 1976); 80 Fed. Reg.

18  2488 (Jan. 16, 2015).  The Mexican wolf is a distinct subspecies of the southwestern gray

19  wolf and historically inhabited the southwestern United States (New Mexico, Arizona,

20  and Texas) and Mexico.  80 Fed. Reg. 2488.  In the early and mid-1900s, Mexican wolf

21  populations declined rapidly due to predator eradication.  *Id.*  By the time the Mexican

22  wolf was listed as an endangered species in 1976, no wild populations were known to

23  remain in either the United States or Mexico.  *Id.*

24  In 1982, FWS issued its first Mexican Wolf Recovery Plan ("1982 Plan").  Plan at

25  14.  It did not contain all of the recovery plan elements as required by Section 4(f)(1)

26  because, at that time, the recovery team could not foresee full recovery and eventual

27

1   delisting of the species due to its dire status.  *Id.*  The 1982 Plan, instead of providing

2   recovery criteria, [3]  included a "prime objective" of maintaining a captive breeding

3   program and re-establishing a viable, self-sustaining population in the Mexican wolf's

4   historic range.  *Id.*  The recovery actions and time and cost estimates were developed to

5   support this prime objective.  *Id.* at 14-15.

6          In 1998, FWS released eleven Mexican wolves from a captive-breeding program

7   into the wild in Arizona and New Mexico pursuant to ESA Section 10(j), 16 U.S.C. §

8   1539(j), which established the Mexican Wolf Experimental Population Area

9   ("MWEPA").  63 Fed. Reg. 1752 (Jan. 12, 1998); 80 Fed. Reg. 2488.  Since then, FWS,

10  in conjunction with officials in Mexico, has conducted additional releases of captive

11  wolves into the wild, and a population of Mexican wolves continues to inhabit portions of

12  the MWEPA and Mexico.  *Id.*

13         FWS reinitiated recovery planning in December of 2015, and hosted a series of

14  workshops that were attended by FWS and Forest Service staff, the states of Arizona,

15  Colorado, New Mexico, and Utah, officials from the Mexican government, and

16  independent scientists from the United States and Mexico with expertise in wolves.  Plan

17  at 15.  On June 29, 2017, FWS released the Mexican Wolf Draft Revised Recovery Plan

18  ("Draft Plan"), and sought public input and independent peer review from scientists,

19  states, and tribal governments.[4]  82 Fed. Reg. 29,918 (June 30, 2017).

20         On November 28, 2017, FWS issued the Mexican Wolf Recovery Plan, First

21  Revision.  82 Fed. Reg. 57,288 (Dec. 4, 2017) (Exhibit A).  The Plan identifies and

22

23  [3]     At the time the 1982 Plan was drafted, the ESA did not require that recovery plans

24  incorporate "objective, measurable" recovery criteria.  Section 1533(f) was amended in
    1988 to include these criteria.  16 U.S.C. § 1533, Pub. L. No. 100-478 (1988), 102 Stat.

25  2306 (current version at 16 U.S.C. § 1533 (2003)).

26  [4]     The Draft Plan is available at
    https://www.fws.gov/news/ShowNews.cfm?ref=mexican-wolf-draft-revised-recovery-

27  plan-released-for-public-comment-&_ID=36065 (last visited May 15, 2018).

Defendants' Mtn. to Dismiss Am. Complaint                                          4
*WildEarth Guardians v. Zinke*, 4:18-cv-00048-JGZ

addresses threats to the species, including human-caused mortality and loss of gene diversity, and explains that its "recovery strategy for the Mexican wolf is to establish and maintain a minimum of two resilient, genetically diverse Mexican wolf populations distributed across ecologically and geographically diverse areas in the subspecies' range in the United States and Mexico." Plan at 10. In order to achieve the recovery goal of long-term survival of the species, and in compliance with the requirements of 16 U.S.C. § 1533(f)(1)(B), the Plan incorporates downlisting and delisting recovery criteria, site-specific management activities, and estimated costs and time. *Id.* at 12. In addition to the Plan, FWS issued two supporting documents: 1) a species Biological Report, which provides background, life-history, and threat assessment information, and 2) a Recovery Implementation Strategy ("Implementation Strategy"), which is a working document that details the near-term, specific activities needed to implement the recovery plan. Plan at 5.

## III.   STANDARDS OF REVIEW

A motion to dismiss for lack of subject-matter jurisdiction may be brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff has "the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). When evaluating a facial attack, the court's analysis is confined to the allegations in the complaint and any exhibits attached to the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. When

1   evaluating a factual attack, the court need not presume the truthfulness of the plaintiff's

2   allegations, and can review evidence beyond the complaint.  *Id.*  A Rule 12(b)(1) motion

3   to dismiss should be granted if the complaint fails to allege facts sufficient to establish

4   subject-matter jurisdiction.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

5   **IV.   ARGUMENT**

6          Plaintiffs allege that the Plan fails to comply with the ESA, and allege that this

7   Court has jurisdiction under both Section 11(g)(1)(C) of the ESA and the APA, 5 U.S.C.

8   § 706(2).  ECF No. 22 at 19-26.[5]  For the following reasons, neither the ESA nor the

9   APA confer jurisdiction on the Court to evaluate Plaintiffs' claims.

10   **A. Plaintiffs' claims that allege violations of the ESA should be dismissed**
11   **because they challenge only discretionary aspects of the Plan.**

12          Section 4(f)(1) of the ESA requires the Secretary to develop and implement plans

13   "for the conservation and survival" of listed species.  16 U.S.C. § 1533(f)(1).  To this

14   end, the Secretary shall, to the maximum extent practicable, incorporate into each

15   recovery plan three aspects:  1) a description of site-specific management actions as may

16   be necessary to achieve the plan's goal for the conservation and survival of the species, 2)

17   objective, measurable criteria which, when met, result in a determination that the species

18   be removed from the list, and 3) estimates of time and cost required to achieve the plan's

19   goal.  16 U.S.C. § 1533(f)(1)(B).   Beyond these statutory requirements, the substance of

20   a recovery plan is discretionary.  *Defs. of Wildlife v. Jewell*, No. CV-14-02472-TUC-JGZ,

21   2015 WL 11182029, at *6 (D. Ariz. Sept. 30, 2015) (distinguishing between the statutory

22   requirements of Section 4(f), which are mandatory, and the substance of a recovery plan,

23   which is discretionary)[6]; *Grand Canyon Trust v. Norton*, No. 04-cv-636PHXFJM, 2006

---

25   [5]      The page numbers cited herein for Plaintiffs' complaint refer to the PDF's
pagination, not the complaint's pagination.

26
27   [6]      In this case dealing with the 1982 Plan for the Mexican wolf, this Court held that it
had jurisdiction over a claim that the 1982 Plan lacked the non-discretionary aspects

1  WL 167560, at *2 (D. Ariz. Jan 18, 2006) ("By stating that the Secretary 'shall' act, the

2  ESA creates a non-discretionary duty to develop and implement plans for the

3  conservation and survival of endangered species.  However, <u>the substance of the plan is</u>

4  <u>left to the discretion of the Secretary</u>." (emphasis added)); *Ctr. for Biological Diversity v.*

5  *Jewell*, No. CV-16-00094-TUC-JGZ, 2018 WL 1586651, at *15 (D. Ariz. Mar. 31, 2018)

6  ("[T]he provisions of a recovery plan are discretionary, not mandatory."); *Strahan v.*

7  *Linnon*, 967 F. Supp. 581, 597-98 (D. Mass. 1997) ("[T]he content of recovery plans is

8  discretionary. . . . In fact, all that is required in a recovery plan is 'the identification of

9  management actions necessary to achieve the Plan's goals for the conservation and

10  survival of the species.'") (quoting *Fund for Animals v. Rice*, 85 F.3d 535, 548 (11th Cir.

11  1996)).

12      Because the ESA citizen suit provision confers jurisdiction on courts only when a

13  plaintiff challenges non-discretionary actions, *Bennett*, 520 U.S. at 172, a court does not

14  have jurisdiction to hear challenges to the substance of recovery plans.  *Norton*, 2006 WL

15  167560, at *2-3 ("[N]o cause of action arises under 16 U.S.C. § 1540(g)(1)(C) for the

16  failure to provide for the conservation and survival of the [species], in contrast to the

17  development and implementation of a plan to conserve them."); *Friends of the Wild Swan*

18  *v. Thorson*, 260 F. Supp. 3d 1338, 1343 (D. Or. 2017) (concluding that "the way in which

19  the Secretary incorporates § 1533(f)(1)(B)'s requirements into recovery plans is

20  discretionary and thus not reviewable"), *appeal filed,* No. 17-35572 (9th Cir. July 13,

21  2017); *Kennecott Copper Corp. v. Castle*, 572 F.2d 1349, 1354 (9th Cir. 1978) (holding

22  that the Clean Air Act's analogous citizen suit provision, 42 U.S.C. § 7604(a)(2), could

23  be used to challenge the EPA Administrator's failure to take "a non-discretionary" action

24

25  required by Section 4(f).  *Defs. of Wildlife*, 2015 WL 11182029, at *9.  Specifically, this
    Court determined that the 1982 Plan did not include delisting criteria or specific cost

26  estimates.  *Id.* at *3.  Here, by contrast, there seems to be no dispute that the current Plan

27  contains the statutory requirements.

1    mandated by the Act, but that it could not be used to challenge "the content of that

2    decision").  Here, Plaintiffs allege four <u>substantive</u> deficiencies in the Plan and, as such,

3    the Court does not have jurisdiction to hear the case.

4         First, Plaintiffs contend that the Plan violates the ESA because it fails to provide a

5    reasonable explanation for an alleged "departure" from the 2012 draft recovery plan.

6    ECF No. 22 at 19-20.  Yet there is no legal requirement that a final recovery plan must

7    mirror the draft recovery plan.  *See Friends of the Wild Swan v. Thorson*, No. 3:16-cv-

8    681-AC, 2017 WL 7310641, at *10 (D. Or. Jan. 5, 2017) (declining to review an alleged

9    inconsistency between an interim recovery plan and the final recovery plan, noting that

10   the agencies' interpretation and application of these documents was discretionary), *aff'd*,

11   260 F. Supp. 3d 1338; *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644,

12   658-59 (2007) (declining to review an alleged change in the agency's position over time,

13   noting that "the only 'inconsistency' respondents can point to is the fact that the agencies

14   changed their minds – something that, as long as the proper procedures were followed,

15   they were fully entitled to do").  Moreover, Plaintiffs challenge the <u>content</u> of the Plan,

16   asserting that the Plan does not include aspects that were included in the draft plan and

17   fails to explain the reason for this departure.  ECF No. 22 at 19-20.  Because the contents

18   of recovery plans are discretionary, *Ctr. for Biological Diversity*, 2018 WL 1586651, at

19   *15, Plaintiffs' challenge here is unreviewable under the ESA citizen suit provision.

20        Plaintiffs' second and third causes of action allege that the Plan violates the ESA

21   for failing to provide site-specific management actions necessary for conservation, and

22   for failing to provide objective, measurable criteria necessary for delisting.  ECF No. 22

23   at 21-23.  Notably, Plaintiffs recognize that the Plan does include site-specific

24   management actions and recovery criteria.  ECF No. 22 at 21 (alleging deficiencies in the

25   site-specific actions included in the Plan); *id.* at 22-23 (alleging that the recovery criteria

26   included in the Plan do not address all of the threats to Mexican wolves).  Plaintiffs, then,

27   are not alleging that the Plan lacks these non-discretionary elements.  Rather, Plaintiffs'

1    allegations are, at bottom, allegations that the Plan does not include enough of these non-

2    discretionary elements to provide for the conservation and survival of the species.

3         The District of Arizona has already rejected this exact argument.  In *Norton*,

4    plaintiffs challenged the recovery plan for the humpback chub, alleging, *inter alia*, that

5    the plan failed to provide for the conservation and survival of the chub.  2006 WL

6    167560, at *1.  Plaintiffs argued that, even if the ESA grants the Secretary discretion as to

7    how to conserve the chub, "there is still a non-discretionary duty to ensure, at minimum,

8    the chub's survival."  *Id.* at *3.  The court disagreed, explaining that "[d]etermining how

9    to provide for the conservation and survival of the humpback chub 'requires the fusion of

10   technical knowledge and skills with judgment which is the hallmark of duties which are

11   discretionary.'"  *Id.* at *2 (*quoting Kennecott Copper*, 572 F.2d at 1354).  As such, the

12   court held that it lacked jurisdiction to hear this claim because there is no cause of action

13   that arises under the ESA citizen suit for the failure to provide for the conservation and

14   survival of a species.  *Id.* at *3; *see also Defs. of Wildlife*, 2015 WL 11182029, at *6

15   (noting that "the Secretary retains discretion over the methods to use in species

16   conservation").  Instead, the only content requirements for recovery plans are that they

17   include three aspects:  delisting criteria, site-specific management activities, and cost and

18   time estimates.  16 U.S.C. § 1533(f)(1)(B); *Norton*, 2006 WL 167560, at * 3 (noting that

19   the development and implementation of recovery plans is non-discretionary).

20        There is no question that the Plan here includes all of the requirements that

21   Congress intended FWS to incorporate.[7]  *See* Plan at 30-37 (detailing recovery criteria);

22

23

24   [7]       To the extent that Plaintiffs are asserting that the Plan does not include the three
     mandatory aspects, Defendants dispute the truth of these allegations and attach the Plan
25   as evidence that it is in compliance with the ESA statutory requirements.  *Safe Air for
     Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district
26   court may review evidence beyond the complaint without converting the motion to
     dismiss into a motion for summary judgment. . . . The court need not presume the
27   truthfulness of the plaintiff's allegations.").

Defendants' Mtn. to Dismiss Am. Complaint                                              9
*WildEarth Guardians v. Zinke*, 4:18-cv-00048-JGZ

1    Plan at 40-41, 43-46 (detailing site-specific activities and estimated cost and timing of

2    recovery).  Plaintiffs' challenge, then, can only be viewed as a challenge to the substance

3    of the Plan, which is left to the discretion of FWS and is unreviewable by a court.  As the

4    District of Arizona noted when it held that the substance of recovery plans was

5    unreviewable, "[a]ny person would be able to challenge the substance of recovery plans

6    by merely alleging that the Secretary's plan is not only poor, but likely to lead to the

7    extinction of a species." *Norton*, 2006 WL 167560, at *3.  Such challenges to the

8    substance of a recovery plan would "substantially expand the scope of the citizen suit

9    provision," when, instead, waivers of federal sovereign immunity like the ESA citizen

10   suit provision "must be strictly construed."  *Id.*

11        Finally, Plaintiffs allege that the Plan violates the ESA for failing to use the best

12   available science.  ECF No. 22 at 24-26.  But these allegations do not satisfy Plaintiffs'

13   burden to plead an alleged failure to comply with a non-discretionary duty because,

14   unlike other subsections of Section 4,[8] Section 4(f)(1) does not impose a best available

15   science requirement for the development and implementation of recovery plans.  *See*

16   *Norton*, 2006 WL 167560, at *2 n.1 (explaining that plaintiffs' ESA claim for failure to

17   use the best scientific evidence in a recovery plan would "likely fail" because 16 U.S.C. §

18   1533(f) does not explicitly require that determinations in recovery plans be based on the

19   best scientific and commercial data available); *Friends of the Wild Swan*, 2017 WL

20   7310641, at *10 ("The language of § 1533(f) does not impose a [best scientific and

21   commercial data requirement] with regard to the development and implementation of

22   recovery plans and the court will not impose one.").  It is clear that these allegations are

23   simply another attack on the substance of the Plan by questioning the science and data

24   underlying FWS's conservation and recovery decisions, actions that fall within FWS's

25   _____

26   [8]      For instance, 16 U.S.C. § 1533(b)(1)(A) & (2) expressly provide that the Secretary
         shall use the best available science and commercial data for listing determinations and
27       critical habitat designations.

discretion in developing recovery plans. *Norton*, 2006 WL 167560, at *2 ("Determining how to provide for the conservation and survival of the [listed species] 'requires the fusion of technical knowledge and skills with judgment which is the hallmark of duties which are discretionary.'" (quoting *Kennecott Copper*, 572 F.2d at 1354)). Because this claim attacks the substance of the Plan, and because there is no best available science requirement for recovery plans, it is unreviewable.

In sum, the Plan complies with the non-discretionary aspects of Section 4(f)(1) by including delisting criteria, site-specific management actions, and time and cost estimates. Because Plaintiffs challenge only discretionary aspects of the Plan, which are unreviewable under the ESA citizen suit provision, Plaintiffs' first cause of action should be dismissed for lack of subject-matter jurisdiction.

**B. Plaintiffs' claims that allege violations of the APA should be dismissed because they are unreviewable.**

Plaintiffs' cause of action under the APA should likewise be dismissed for lack of subject-matter jurisdiction because the Plan is not a final agency action and is thus unreviewable. Alternatively, the cause of action should be dismissed because the APA does not allow for judicial review where, as here, the challenged action is committed to agency discretion by law.

The APA provides a "waiver of sovereign immunity in suits seeking judicial review of a federal agency action[.]" *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998). Such a waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." *Hanger v. Dep't of Labor*, 569 F.3d 898, 903 (9th Cir. 2009) (citation omitted). To obtain judicial review under the APA, a plaintiff must challenge a final agency action. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006). "For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.*

at 982 (quoting *Bennett*, 520 U.S. at 178).  In determining whether the second prong has been met, courts look to the "practical and legal effects of the agency action" and "whether the [action] has the status of law or comparable legal force, and whether immediate compliance with its terms is expected."  *Id.* at 987 (citation omitted).

In *Bennett*, the Supreme Court determined that a biological opinion constitutes final agency action under the second prong because it, along with an accompanying incidental take statement, "alter[s] the legal regime to which the action agency is subject, authorizing it to take the endangered species if (but only if) it complies with the prescribed conditions," and thus had "direct and appreciable consequences."  520 U.S. at 178.  In contrast, non-final agency actions "carried no direct consequences," were "in no way binding," and "in no way affected the legal rights of the relevant actors." *Id.*; *see also Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, 132 F. Supp. 3d 98, 118 (D.D.C. 2015) (explaining that one line of analysis for evaluating whether legal consequences flow from an action is by inquiring whether the agency has "imposed any rights and obligations" or "genuinely left the agency and its decisionmakers free to exercise discretion" (citation omitted)).

Here, the Plan is not a final agency action because it does not have "direct and appreciable legal consequences" and therefore cannot satisfy the requirements of the second prong.  *Bennett,* 520 U.S. at 178.  The Ninth Circuit and other jurisdictions have repeatedly held that recovery plans provide <u>guidance</u> for the conservation of endangered and threatened species, and are not legally binding authorities.  *See Conservation Cong. v. Finley*, 774 F.3d 611, 614 (9th Cir. 2014); *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1114 n.8 (9th Cir. 2015) ("The Endangered Species Act does not mandate compliance with recovery plans for endangered species."); *Friends of Blackwater v. Salazar*, 691 F.3d 428, 432-34 (D.C. Cir. 2012) (describing a recovery plan as a non-binding "statement of intention").  This Court has reached the same conclusion. *Defs. of Wildlife*, 2015 WL 11182029, at *6 (describing a recovery plan as a "basic road

1   map to recovery" for a species that is "not binding upon the agency"); *Ctr. for Biological*

2   *Diversity*, 2018 WL 1586651, at *15 n.14  ("Recovery plans do not govern all aspects of

3   recovery under the ESA, but rather are non-binding statements of intention with regards

4   to the agency's long-term goal of conservation.").

5        The non-binding nature of recovery plans is further highlighted by the fact that the

6   ESA does not provide a timeframe for implementation (16 U.S.C. § 1533(f)(1)), and the

7   ESA also affords FWS the discretion to revise recovery plans as necessary over time.  16

8   U.S.C. § 1533(f)(4).  Additionally, FWS may deviate from the actions outlined in the

9   recovery plan when presented with new information, and is not required by statute or

10   regulation to amend the plan in order to do so.  *Friends of Blackwater,* 691 F.3d at 434

11   ("A [recovery] plan is a statement of intention, not a contract.  If the plan is overtaken by

12   events, then there is no need to change the plan; it may simply be irrelevant."); *Fund for*

13   *Animals*, 85 F.3d at 547 ("By providing general guidance as to what is required in a

14   recovery plan, the ESA 'breathe[s] discretion at every pore.'") (quoting *Strickland v.*

15   *Morton*, 519 F.2d 467, 469 (9th Cir. 1975)).

16        Another test for determining whether legal consequences flow from an action

17   looks to the "agency's expressed intentions."  *Cmty. Fin. Servs.*, 132 F. Supp. 3d at 118.

18   Under this analysis, there are three factors for consideration:  "(1) the agency's own

19   characterization of the action; (2) whether the action was published in the Federal

20   Register or the Code of Federal Regulations; and (3) whether the action has binding

21   effects on private parties or on the agency."  *Id.* (citation omitted).  Application of this

22   approach likewise shows that the Plan is not final agency action.

23        First, FWS clearly characterizes the Plan as a non-binding guidance document,

24   describing it as "an effective roadmap for the recovery of a species," and an "advisory

25   document, not [a] regulatory document."  Plan at 5.  Second, while a "notice of

26   availability" of the Plan was published in the Federal Register, 82 Fed. Reg. 57,288, the

27   Plan itself is not published there, and is instead available on the FWS website.  *See*

1   *https://www.fws.gov/southwest/es/mexicanwolf/planning.html*.  Finally, and as explained

2   in the preceding paragraphs, the Plan has no binding effects on private parties or on the

3   agency.  *See also* Plan at 5 ("A recovery plan <u>does not commit any entity to implement</u>

4   <u>the recommended strategies</u> or actions contained within it for a particular species, <u>but</u>

5   <u>rather provides guidance</u> for ameliorating threats and implementing proactive

6   conservation measures, as well as providing context for implementation of other sections

7   of the [ESA]." (emphasis added)).

8           Whether evaluating the "direct and appreciable legal consequences" or the

9   "agency's expressed intentions," under either analysis, the Plan does not satisfy the

10  second prong for final agency action.  This is because recovery plans are non-binding

11  guidance documents, which an agency may freely revise or even deviate from, and which

12  carry no direct legal consequences.  As such, the Plan cannot be considered a final

13  agency action and is thus unreviewable under the APA.

14          Alternatively, Plaintiffs' second cause of action should be dismissed because the

15  substance of the Plan is committed to agency discretion by law and therefore

16  unreviewable.  A challenged agency action is not reviewable under the APA if the action

17  is committed to agency discretion by law.  5 U.S.C. §§ 701(a), 704.  Agency action is

18  deemed to be committed to agency discretion when "statutes are drawn in such broad

19  terms that in a given case there is no law to apply."  *Citizens to Pres. Overton Park v.*

20  *Volpe*, 401 U.S. 402, 410 (1971) (citation omitted); *see also Heckler v. Cheney*, 470 U.S.

21  821, 830 (1985) (explaining that agency action is deemed committed to agency discretion

22  when there is "no meaningful standard against which to judge the agency's exercise of

23  discretion").

24          Here, Plaintiffs' challenge to the contents of the Plan is unreviewable because it

25  challenges discretionary aspects of the Plan.  *See, e.g., Conservation Nw. v. Kempthorne*,

26  No. 04-1331-JCC, 2007 WL 1847143, at *4 (W.D. Wash. June 25, 2007) (holding that an

27  agency's timeline for the implementation of a recovery plan is committed to agency

discretion by law and thus unreviewable under the APA).  Instead of challenging non-discretionary aspects of the Plan that have clear standards with which to measure compliance (for example, whether the Plan included the three mandatory aspects the Secretary shall incorporate into a recovery plan), Plaintiffs challenge the substance of the Plan, which has no meaningful standard against which to judge FWS's exercise of discretion and is thus unreviewable under the APA.

**V.      CONCLUSION**

　　　　For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).


Dated: June 4, 2018

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　JEFFREY H. WOOD,
　　　　　　　　　　　　　　　　　　Acting Assistant Attorney General
　　　　　　　　　　　　　　　　　　Environment & Natural Resources Division
　　　　　　　　　　　　　　　　　　SETH M. BARSKY, Chief
　　　　　　　　　　　　　　　　　　MEREDITH L. FLAX, Assistant Chief

　　　　　　　　　　　　　　　　　　*/s/ Sarah J. Sheffield*
　　　　　　　　　　　　　　　　　　SARAH J. SHEFFIELD
　　　　　　　　　　　　　　　　　　Trial Attorney HI Bar Number 10415
　　　　　　　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　　　　　　　Environment & Natural Resources Division
　　　　　　　　　　　　　　　　　　Wildlife & Marine Resources Section
　　　　　　　　　　　　　　　　　　Ben Franklin Station
　　　　　　　　　　　　　　　　　　P.O. Box 7611
　　　　　　　　　　　　　　　　　　Washington, DC 20044-7611
　　　　　　　　　　　　　　　　　　Phone: (202) 305-0211
　　　　　　　　　　　　　　　　　　Fax: (202) 305-0275

　　　　　　　　　　　　　　　　　　*Attorneys for Federal Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Sarah J. Sheffield*
Sarah J. Sheffield