Matthew K. Bishop, *admitted pro hac vice*
Montana Bar No. 9968
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59603
Tel: 406-324-8011
bishop@westernlaw.org

John R. Mellgren, *admitted pro hac vice*
Oregon Bar No. 114620
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Tel: 541-359-0990
mellgren@westernlaw.org

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| WildEarth Guardians, a non-profit organization; Western Watersheds Project, a non-profit organization; New Mexico Wilderness Alliance, a non-profit organization; and the Wildlands Network, a non-profit organization,<br><br>     Plaintiffs,<br>     vs.<br><br>Ryan Zinke, as Secretary of the Department of the Interior; the U.S. Department of the Interior, a federal department; Greg Sheehan, as Acting Director of the U.S. Fish and Wildlife Service; and the U.S. Fish and Wildlife Service, a federal agency,<br><br>     Federal-Defendants. | No. CV-18-00048-JGZ<br><br>RESPONSE IN OPPOSITION TO FEDERAL-DEFENDANTS' MOTION TO DISMISS<br><br>(Oral Argument Requested) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ........................................................................................................... 1

STANDARD OF REVIEW............................................................................................ 2

ARGUMENT ................................................................................................................. 3

I.  The Service's recovery plan is challengeable under the ESA......................................... 3

    A.  The Service has a non-discretionary duty to include actions necessary for
        conservation and objective delisting criteria in recovery plans................................. 4

    B.  The Service has a non-discretionary duty to utilize the best available science in
        developing recovery plans. ...................................................................................... 10

II. The Service's recovery plan is challengeable under the APA. ..................................... 13

CONCLUSION .......................................................................................................... 17

CERTIFICATE OF SERVICE..................................................................................... 18

i

# TABLE OF AUTHORITIES

**CASES**

*Alaska v. Lubchenco,*
   723 F.3d 1043 (9th Cir. 2013) ................................................................ 15

*Bennett v. Spear,*
   520 U.S. 154 (1997) ...................................................................... passim

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC,*
   132 F. Supp. 3d 98 (D.D.C. 2015) ......................................................... 16

*Coos County Board of County Com'rs v. Kempthorne,*
   531 F.3d 792 (9th Cir. 2008) ................................................................ 11

*Center for Biological Diversity v. Jewell,*
   15-cv-00019-JGZ ...................................................................... 3,15

*Ctr. for Biological Diversity v. Norton,*
   254 F.3d 833 (9th Cir. 2001) ................................................................ 3,5

*Defenders of Wildlife v. Babbitt,*
   130 F. Supp. 2d 121 (D.D.C. 2001) ................................................. passim

*Defenders of Wildlife v. Hall,*
   565 F.Supp.2d 1160 (D. Mont. 2008) ................................................... 14

*Defenders of Wildlife v. Jewell,*
   2016 WL 7852469 (D. Ariz. Oct. 18, 2016) ........................................... 10

*Friends of the Wild Swan v. Thorson,*
   260 F.Supp.3d 1338 (D. Or. 2017) ..................................................... 8,9,16

*Fund for the Animals v. Babbitt,*
   903 F. Supp. 96 (D.D.C. 1995) ..................................................... passim

*Grand Canyon Trust v. Norton,*
   2006 WL 167560*5 (D. Ariz. 2006) (D. Ariz. 2006) ...................... 6,8,9,11

*Greater Yellowstone Coalition v. Servheen,*
   665 F.3d 1015 (9th Cir. 2011) ......................................................... 3,15

*Havasupai Tribe v. Provencio,*
 876 F.3d 1242 (9th Cir. 2017) ............................................................... 13

*Leite v. Crane Co.,*
 749 F.3d 1117 (9th Cir. 2014) ................................................................. 2

*Or. Natural Desert Ass'n v. U.S. Forest Serv.,*
 465 F.3d 977 (9th Cir. 2006) ................................................................. 16

*Organized Village of Kake v. U.S. Dept. of Ag.,*
 795 F.3d (9th Cir. 2015) ......................................................................... 2

*Sackett v. EPA,*
 132 S.Ct. 1367 (2012) ........................................................................... 16

*Southwest Ctr. for Biological Diversity v. Babbitt,*
 1999 WL 33438081*6 (D. Ariz. 1999) (D. Ariz. 1999) ..................... 6,7,9

*Strahan v. Linnon,*
 967 F. Supp. 581 (D. Mass. 1997) ........................................................... 8

*U.S. Army Corps of Engineers v. Hawkes,*
 136 S.Ct. 1807 (2016) ........................................................................... 16

**STATUTES**

5 U.S.C. § 704 ......................................................................................... 13

5 U.S.C. § 706 ........................................................................................... 1

16 U.S.C. § 1532 ....................................................................................... 3

16 U.S.C. § 1533 ............................................................................. passim

16 U.S.C. § 1540 ..................................................................................... 1,3

Pub. L. 95-632 (1978) ............................................................................... 5

Pub. L. 100-478 (1988) ............................................................................. 5

**FEDERAL REGULATIONS**

50 C.F.R. § 401.01 ................................................................................... 3

50 C.F.R. § 402.02 ................................................................. 3

50 C.F.R. § 424.11 ................................................................ 12

59 Fed. Reg. 34,270 (July 1, 1994) ................................... 10

82 Fed. Reg. 30,502, 30,553 (June 30, 2017) ................... 14

**OTHER**

H.R. Rep. No. 95-1805 (1978) ............................................ 5

Sen. Rep. No. 100-240 (1988) ........................................... 5

# INTRODUCTION

This Court should deny Federal-Defendants' ("the Service's") Rule 12(b)(1) motion to dismiss WildEarth Guardians' ("Guardians'") amended complaint for lack of subject-matter jurisdiction. This case challenges the Service's 2017 Mexican wolf recovery plan ("2017 recovery plan" or "recovery plan"). *See* Doc. 24-2. Guardians alleges the recovery plan is arbitrary, unlawful, and should be set aside and remanded to the Service. Doc. 22 at 26.

Guardians is pursuing four causes of action under the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(C), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). Specifically, Guardians' alleges the Service's recovery plan fails to include two of the three mandatory aspects required by section 4(f)(1)(B) of the ESA: (1) site-specific management actions necessary to achieve the conservation goals for Mexican wolves; and (2) objective, measureable criteria for delisting. *See* 16 U.S.C. §§ 1533(f)(1)(b)(i), (ii); Doc. 22 at 21–23. Evidence in the record will reveal that while the Service's recovery plan includes "actions" and "criteria" it does not include actions necessary for the recovery or objective, measureable criteria for delisting as required by the ESA. The Service's recovery plan also fails to utilize the best available science on the recovery needs of Mexican wolves, as revealed by the published, peer reviewed literature. *See* Doc. 22 at 24–26. The "unexplained inconsistency" between the Service's 2012 draft recovery

1

plan – which was produced by scientific experts – and the Service's 2017 recovery plan is also grounds for declaring the recovery plan arbitrary and unlawful under the APA. *See Organized Village of Kake v. U.S. Dept. of Ag.*, 795 F.3d 966, 966 (9th Cir. 2015).

The Service's Rule 12(b)(1) motion asks this Court to dismiss this case for allegedly failing to identify the violation of a "non-discretionary duty" under the ESA or "final agency action" under the APA. The Service's motion is without merit and should be denied.

## STANDARD OF REVIEW

The district court reviews a facial attack to subject matter jurisdiction in a Rule 12(b)(1) motion "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, [and] the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The Service asserts this "court need not presume the truthfulness of the plaintiff's allegations" because this is a "factual" attack. Doc. 24 at 10–11, 14 n.7. But the evidence relied on (the 2017 recovery plan) does not contradict Guardians' factual allegations, which are sufficient for subject-matter jurisdiction. This Court should therefore treat the motion as a facial attack and accept all allegations as true. *Leite*, 749 F.3d at 1121.

## ARGUMENT[1]

### I.      The Service's recovery plan is challengeable under the ESA.

The ESA provides a cause of action against the Service where there is an alleged failure to comply with a "non-discretionary" duty. 16 U.S.C. § 1540(g)(1)(C).[2] A non-discretionary duty is one of obligation, not discretion, identified by Congress's use of "shall." *Bennett v. Spear*, 520 U.S. 154, 172 (1997). Congress's use of "shall" in section 4 of the ESA, for example, imposes a non-discretionary duty on the Service to designate critical habitat, *id.*, respond to listing petitions, *Ctr. for Biological Diversity v. Norton,* 254 F.3d 833, 837 (9th Cir. 2001), and utilize the best available science, *Greater Yellowstone Coalition v. Servheen*, 665 F.3d 1015, 1024 (9th Cir. 2011).

Pursuant to section 4(f) of the ESA – at issue here – Congress directed that the Service "shall" develop and implement recovery plans for the conservation of listed species. *See* 16 U.S.C. § 1533(f)(1).[3] Congress also directed that these recovery plans "shall" contain "to the maximum extent

---

[1] Please see this Court's related 10(j) decision, *Center for Biological Diversity v. Jewell*, 15-cv-00019-JGZ (Doc. 200), for background information on Mexican wolves, listing under the ESA, and previous recovery efforts.

[2] The Secretary of the Interior is responsible for implementing the ESA but delegated that duty to the Service. 50 C.F.R. § 402.01(b). Where the ESA uses "Secretary" Guardians substitutes "Service" to reflect this delegation.

[3] "Conservation" is synonymous with "recovery" in the ESA. 50 C.F.R. § 402.02; 16 U.S.C. § 1532(3). The terms are thus used interchangeably.

practicable," three mandatory aspects: (1) site-specific management actions necessary to achieve the plan's conservation goals; (2) criteria that when met, would result in the removal of a species from the ESA's list; and (3) time and cost estimates. 16 U.S.C. §§ 1533(f)(1)(B)(i)–(iii).[4]

Notably, the Service concedes these statutory directives are "non-discretionary" and subject to review under the ESA. *See* Doc. 24 at 6, 11, 20. The Service also admits there is a non-discretionary duty "to incorporate three mandatory aspects" into recovery plans. *Id*. The Service nonetheless asserts there is no cause of action under the ESA because "the substance" of a recovery plan is discretionary. *Id*. According to the Service, once it develops a plan *that purportedly* includes the "three mandatory aspects," the court is powerless to review the legal challenge. Doc. 24 at 13. The Service also maintains there is no duty to utilize the best available science in recovery planning. The Service is wrong on both accounts.

### A. The Service has a non-discretionary duty to include actions necessary for conservation and objective delisting criteria in recovery plans.

Guardians' challenges the Service's development of a recovery plan that

---

[4] The phrase "to the maximum extent practicable" does not permit "unbridled discretion." *Defenders of Wildlife v. Babbitt*, 130 F. Supp. 2d 121, 131 (D.D.C. 2001). "It imposes a clear duty on the agency to fulfill the statutory command to the extent that it is feasible or possible." *Id*. Here, the Service never demonstrated that providing site-specific management actions necessary for recovery and criteria for delisting "would be impracticable." Doc. 22 at 21, 23.

4

fails to include two of the "three mandatory aspects" required by the ESA: (1) actions necessary for the conservation of Mexican wolves; and (2) criteria that, when met, supports delisting. Doc. 22 at 21, 22.

The plain language of the ESA is clear: the Service "shall" prepare a recovery plan for the "conservation" of Mexican wolves, *see* 16 U.S.C. § 1533(f)(1), and "shall, to the maximum extent practicable," include "site-specific management actions" necessary "to achieve the plan's conservation" goals and criteria that "when met, would result" in the removal of a species from the ESA's list, 16 U.S.C. §§ 1533(f)(1)(B)(i), (ii). "Shall means shall." *Ctr. for Biological Diversity,* 254 F.3d at 837 (quotation omitted).

The text of the ESA is supported by its legislative history. Congress amended the ESA to add recovery plans to the Service's non-discretionary duties in 1978. Pub. L. 95-632 (1978). The intent of these amendments was to "require the Secretary to develop and implement recovery plans . . . designed to ensure the conservation or survival of each listed species." H.R. Rep. No. 95-1805, at 28 (1978). Congress amended the ESA again in 1988 to add non-discretionary components to recovery plans, *see* Pub. L. 100-478 (1988), including the two aspects at issue here. The "[i]ncorporation of this information will ensure that plans are as explicit as possible in describing the steps to be taken in the recovery of a species." Sen. Rep. 100-240, at 9 (1988).

The Service's statement, therefore, that there is "no question" the

recovery plan "includes all of the requirements that Congress intended," Doc. 24 at 14, because it includes generic "actions" and "criteria" is misleading. Congress directed that recovery plans include more than generic actions or criteria – they shall include "actions" necessary "to achieve the plan's conservation" goals and criteria that "when met, would result" in the removal of a species from the ESA's list. 16 U.S.C. §§ 1533(f)(1)(B)(i), (ii). These duties, like other section 4 obligations, are thus "non-discretionary" and properly reviewed under the ESA. *See Fund for the Animals v. Babbitt*, 903 F. Supp. 96, 104 (D.D.C. 1995) (reviewing contents of recovery plan to evaluate compliance with non-discretionary ESA duties); *Southwest Ctr. for Biological Diversity v. Babbitt*, 1999 WL 33438081, *6 (D. Ariz. 1999) (same); *Defenders of Wildlife*, 130 F. Supp. 2d 121, 131-132 (D.D.C. 2001) (same); *see also Grand Canyon Trust v. Norton,* 2006 WL 167560, *5 (D. Ariz. 2006) (recognizing section 4(f)'s content requirements as non-discretionary duties).

As explained in *Fund for the Animals*, the ESA requires more than the identification of garden-variety "actions." The actions identified must be necessary to achieve a recovery plan's goals for conservation, and a plan that "recognizes specific threats to the conservation [of a listed species] . . . but fails to recommend corrective action . . . would not meet the ESA's standard." 903 F. Supp. at 108; *see also Defenders of Wildlife*, 130 F. Supp. 2d at 132 (same). "Nor would a [recovery] plan that completely ignores threats to [the]

conservation and survival of a species." *Id.* A recovery plan that fails to include criteria "directed towards the goal of removing" a species from the list must also fail. *Id.* at 111; *see also Southwest Ctr. for Biological Diversity*, 1999 WL 33438081 at *6 (evaluating whether recovery plan includes adequate delisting criteria); *Defenders of Wildlife*, 130 F. Supp. 2d at 134 (setting aside recovery plan for lack of adequate delisting criteria).

These cases are consistent with the Service's own recovery policy. *See* Exhibit ("Ex.") A. The Service's policy explains that while recovery plans are guidance, not regulatory, documents there are "statutory requirements" or "sideboards" that must be incorporated into recovery plans. *Id.* at 1.2-3. These include the ESA's directive to include "actions" necessary to conserve the species and delisting criteria. *See id.* at 1.2-1. In the Service's own words: "The ESA requires that recovery plans include the actions that may be necessary to achieve recovery," *id.* at 5.1-4, and "[d]eveloping recovery criteria that are both objective and measurable is a statutory requirement in the ESA for recovery plans," *id.* at 5.1-14.

Indeed, any interpretation to the contrary would undermine the ESA's conservation objective. The Service could develop "recovery plans" in name only and plans that are void of meaningful "actions" and "criteria" to conserve listed species. While the Service certainly has "discretion as to the substance of the ultimate decision" it does not have the discretion "to ignore the

required procedures of decision making." *Bennett*, 520 U.S. at 1166.

For support, the Service relies heavily on *Grand Canyon Trust,* 2006 WL 167560 at *2–3. But the allegations in that case were different. There, the plaintiffs made a more general argument that the humpback chub plan failed to conserve the species. *Id.* at *2. The court rejected this broad attack on summary judgment and concluded there was no cause of action "for a failure to provide for the conservation" of the species (unlike a specific challenge to the development of a recovery plan at issue here). *Id.* at *3. Relevant here, in *Grand Canyon Trust*, the court ultimately set aside the Service's recovery plan for failing to include the requisite time and costs estimates (the third "mandatory aspect" required by section 4(f) of the ESA). *See id.* at *5. In so doing, the court recognized jurisdiction under the ESA because the Service had failed to "comply with [its] non-discretionary duty" under section 4(f) of the ESA. *Id.* This is precisely the situation here.[5]

In *Friends of the Wild Swan v. Thorson*, 260 F.Supp.3d 1338 (D. Or. 2017), *appeal docketed*, No. 17-35572 (9th Cir. July 13, 2017), the district

---

[5] The Service's reliance on *Strahan v. Linnon*, 967 F. Supp. 581, 597–98 (D. Mass. 1997), is also misplaced. There, the court rejected the plaintiff's insistence that certain, specific measures be included in a recovery plan. *Id.* at 597. The Court agreed, however, with *Fund for the Animals* and held that a recovery plan is required to include actions necessary to achieve the plan's conservation goal. *Id.* The Court also assumed jurisdiction and evaluated whether the requisite conservation actions and delisting criteria were included in the challenged recovery plan. *See id.* at 597–99.

court did find that a plaintiff's challenge to a bull trout recovery plan failed to qualify as a "non-discretionary" duty. *See id.* at 1343. In so doing, however, the court recognized a citizen's ability to challenge a recovery plan if it fails to incorporate "one of the [three] requirements" listed in section 4(f)(1)(B) of the ESA – the very allegation here – but noted that the only deficiencies alleged in that case related to areas within the Service's discretion. *Id.* at 1341. The district court in *Friends of the Wild Swan* also recognized the plaintiff's ability to amend the complaint and "assert additional facts" to show a violation of a non-discretionary duty. *Id.* at 1343. The allegations in this case, by contrast, are properly pled and targeted at two of the "three mandatory aspects" required for all recovery plans. *See* Doc. 22 at 21, 22.

Further, even if one assumes, *arguendo*, that the underlying allegations in *Friends of the Wild Swan* are analogous, the holding in that case – which is currently up on appeal and pending before the Ninth Circuit – is in tension with the majority of district court cases recognizing that section 4(f)(1)(B) of the ESA imposes non-discretionary obligations on the Service that are reviewable under the ESA. *See Fund for the Animals*, 903 F. Supp. at 104–07, 111–12; *Southwest Ctr. for Biological Diversity*, 1999 WL 33438081 at *6; *Defenders of Wildlife*, 130 F. Supp. 2d at 131–32; *Grand Canyon Trust,* 2006 WL 167560 at *5.

9

**B.    The Service has a non-discretionary duty to utilize the best available science in developing recovery plans.**

The Service maintains there is no mandatory duty to utilize the best available science in recovery plans and thus no cause of action under the ESA. Doc. 24 at 15. This, however, contradicts the Service's own statements and commitments to this Court about how the 2017 recovery plan for Mexican wolves would be prepared. *See Defenders of Wildlife v. Jewell*, 2016 WL 7852469, at *7 (D. Ariz. Oct. 18, 2016). The Service agreed to prepare the recovery plan in accordance with its peer review policy, *see id*., and this policy expressly acknowledges and requires the Service to make "biological decisions," including decisions that involve recovery planning, upon "the best scientific and commercial data available," 59 Fed. Reg. 34,270 (July 1, 1994). The ESA "requires" that all biological decisions be based on the best available science and that recovery plans will utilize the "expertise of and actively solicit independent peer review" to obtain "all available scientific and commercial information." *Id*.

Indeed, the 2017 recovery plan speaks for itself: "In accordance with section 4(f)(1) of the ESA and to the maximum extent practicable, recovery plans delineate actions which the best available science indicates are required to recover and protect listed species." Doc. 24-2 at 3; *see also* Ex. A at 5.1-2 (same), at 5.2-2 (Service must "ensure recovery plans are based on the

best scientific information and judgment").

Relying on dictum in a footnote in *Grand Canyon Trust*, the Service

maintains section 4(f)(1) of the ESA does not "explicitly" require recovery

plans use the best available science. Doc. 24 at 15. But this is misleading and

incorrect. Section 4(f)(1)(b)(ii) of the ESA requires the Service to incorporate

objective, measurable delisting criteria into a recovery plan "in accordance

with the provisions of this section," i.e., in accordance with section 4 of the

ESA which does require use of the best available science. 16 U.S.C. §

1533(f)(1)(B)(ii). As explained by the Ninth Circuit, "in accordance with" in

section 4(c) of the ESA refers to "the decision making process [of Section 4] in

general" and the use of the best available science is critical to that process.

*Coos County Board of County Com'rs v. Kempthorne*, 531 F.3d 792, 806–07

(9th Cir. 2008). The district court in *Grand Canyon Trust* never addressed

this argument and refused to "consider" the issue. *See* 2006 WL 167560 at \*2.

Notably, the Service's policy explains that the delisting criteria

required in recovery plans "must address threats to the species" from the five

factors outlined in section 4(a)(1) of the ESA. Ex. A at 5.1-16; *see also Fund

for the Animals*, 903 F. Supp. at 111 (same); *Defenders of Wildlife,* 130 F.

Supp. 2d at 133 (same). It is well established that consideration of these five

factors must be done in accordance with the best available science. 16 U.S.C.

§ 1533(b). As such, the Service cannot logically comply with its obligation to

11

incorporate objective delisting criteria into a recovery plan that addresses the five factors without first utilizing the best available science on those threats. *See Defenders of Wildlife,* 130 F. Supp. 2d at 133 (setting aside recovery plan for failure to address five threat factors). The ESA's requirement to utilize the best available science ensures the statute is not being "implemented haphazardly, on the basis of speculation or surmise." *Bennett*, 520 U.S. at 176

Indeed, any attempt by the Service to read the best available science requirement out of section 4(f) would trigger an absurd result. The ESA directs the Service to utilize the best available science when making "recovery" decisions for delisting. 16 U.S.C. § 1533(c)(2). "A species may be delisted on the basis of recovery only if the best scientific and commercial data available indicate that it is no longer endangered or threatened." 50 C.F.R. § 424.11(d)(2). Recovery plans, in turn, are the underlying documents the Service uses to support "recovery" decisions. A recovery plan "delineates, justifies, and schedules the research and management actions necessary to support recovery of a species." *Fund for the Animals*, 903 F. Supp. at 104 (citing Ex. A at 1.1-1). A recovery plan is thus "one of the most important tools to ensure sound scientific and logistical decision-making throughout the recovery process." Ex. A at 1.1-1; *see also Defenders of Wildlife*, 130 F. Supp. 2d at 131 (same). If recovery findings for delisting must use the best available science and if recovery plans are the roadmap for such findings, then surely

12

the decision and the plan must be in sync and use the same science.

## II.   The Service's recovery plan is challengeable under the APA.

The ESA does not provide the only cause of action against the Service. *Bennett*, 520 U.S. at 175. Nor does it supplant or preclude judicial review under the APA. *Id*. The APA provides a separate right to judicial review of all "final agency actions" for which there is no other adequate remedy in a court. 5 U.S.C. § 704. Two conditions must be satisfied for actions to be final. First, the action "must mark the 'consummation' of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-178. Second, the "action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id*. Courts consider the effects of the action and "define the finality requirement in a pragmatic and flexible manner." *Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1250 (9th Cir. 2017).

Here, the Service does not contest that *Bennett's* first requirement is met. The Service's focus, rather, is on *Bennett's* second requirement and a theory that the recovery plan is not a final agency action because it "does not have 'direct and appreciable legal consequences.'" Doc. 24 at 17. This new theory, however, is betrayed by the Service's own policy where it expressly concedes recovery plans qualify as "final agency action" subject to review under the APA, *see* Ex. A at 2.3-10, and explains, in detail, the importance of

13

recovery planning and its determinative effect on the Service's ESA

obligations, *see id.* at 1.1-1. The Service's policy explains that while recovery

plans are guidance (not regulatory) documents, they are nonetheless "one of

the most important tools to ensure sound scientific and logistical decision-

making throughout the recovery process." *Id.* Recovery plans serve as the

"road map for species recovery – [they] lay[] out where we need to go and how

best to get there" and the ESA "clearly envisions recovery plans as the

central organizing tool for guiding each species' recovery process." *Id.*

As recently explained by the Service in its delisting rule for

Yellowstone's grizzly bears, while recovery plans are "not regulatory

documents . . . they are intended to provide guidance to the Service and our

partners on methods to ameliorate threats to listed species and on criteria

that may be used to determine when recovery is achieved." 82 Fed. Reg.

30,502, 30,553 (June 30, 2017). Compliance with recovery plans is thus

expected (if not required) for delisting. In fact, in the grizzly bear case, the

Service was compelled to revise the criteria in the recovery plan as a

prerequisite to delisting. *See id.* This was necessary because courts routinely

evaluate compliance with recovery plan criteria when determining if delisting

proposals are arbitrary and capricious. *See, e.g.*, *Defenders of Wildlife v. Hall*,

565 F.Supp.2d 1160, 1171–72 (D. Mont. 2008) (holding the gray wolf had not

attained the recovery criteria and the Service had not, alternatively, provided

14

reasoning to reject the criteria); *Greater Yellowstone Coalition*, 665 F.3d at 1021–30 (discussing importance of recovery criteria and considering criteria in overturning grizzly bear delisting proposal).

Recovery plans also "guide Federal agencies in fulfilling" their section 7 consultation obligations, Ex. A at 1.1-1, and courts often look to attainment of recovery criteria when assessing compliance with section 7 consultations under the ESA, *see, e.g.*, *Alaska v. Lubchenco*, 723 F.3d 1043, 1049–50 (9th Cir. 2013) (agency had to consider whether continued fishing could prevent the species from achieving the recovery plan's goals for delisting). In addition, recovery plans guide federal agencies in fulfilling a number of other ESA obligations, including the development of habitat conservation plans ("HCPs") under section 10, special rules for threatened species under section 4(d), and the creation and management of experimental populations – like the Mexican wolf at issue here – pursuant to section 10(j) of the ESA. Ex. A at 1.1-1. In this Court's related 10(j) case, for example, the Service insisted that the 2017 recovery plan "will serve as a reference point" and be used as "guidance" for the revised 10(j) rule. *Ctr. for Biological Diversity v. Jewell*, 15-cv-00019-JGZ (Doc. 207 at 4 of 8). The Service is keenly aware of the determinative effect recovery plans have on its ESA obligations.

The Service counters that this Court should adopt a more stringent test for *Bennett's* second requirement, one that looks at other factors, including

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

publication in the Federal Register and whether the action is binding on private parties or the agency. Doc. 24 at 18 (citing *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*, 132 F. Supp. 3d 98, 118 (D.D.C. 2015)). But this is not the *Bennett* test. *See* 520 U.S. at 178. *Bennett* said the second requirement could be satisfied if the action is "one by which rights *or* obligations have been determined, *or* from which legal consequences will flow." 520 U.S. at 178 (emphasis added). Nor is the Service's new test consistent with Ninth Circuit precedent recognizing "several avenues for meeting the second finality requirement." *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006). Agency actions must "impose an obligation, deny a right, *or* fix *some* legal relationship." *Id.* (emphasis added and in original). "The legal relationship, [however], need not alter the legal regime to which the involved federal agency is subject," and "*Bennett's* second requirement can be met through different kinds of agency actions, not only one that alters an agency's legal regime." *Id.*; *see also U.S. Army Corps of Engineers v. Hawkes*, 136 S.Ct. 1807, 1814 (2016) (considering the effect of action to determine finality); *Sackett v. EPA*, 132 S.Ct. 1367, 1372 (2012) (same).[6]

---

[6] In *Friends of the Wild Swan*, the court found that compliance with recovery plans is not even "expected." 260 F. Supp. 3d at 1344 n.7. Little support for this finding, however, is provided and the court fails to acknowledge the critical role recovery plans play in delisting decisions, section 7 consultation, HCPs, special 4(d) rules, or 10(j) rules for experimental populations.

As discussed above, recovery plans meet this test. Though technically "non-binding," recovery plans – as the name implies – are critical instruments in the Service's efforts to recover listed species under the ESA and there are practical, real-world, and legal consequences for non-compliance. *See supra* pp. 14-15. In this respect, a recovery plan is similar to the biological opinion at issue in *Bennett*. The Service is technically free to disregard the strategy, actions, and criteria included in a recovery plan – much like it is "technically free to disregard [a] biological opinion and proceed with its proposed action," *Bennett*, 520 U.S. at 170 – but the Service "does so at its own peril (and that of its employees)." *Id*.

The Service's final argument that recovery plans are not reviewable because they are "committed to agency discretion by law" deserves little attention. As described above, any contention that the provisions of section 4(f)(1)(B) of the ESA are discretionary would fly in the face of its text – which uses the word "shall" – the ESA's legislative history, the Service's own policy, and the relevant caselaw. *See supra* pp. 4-13; *cf. Bennett*, 520 U.S. at 175.

## CONCLUSION

For the forgoing reasons, this Court should deny the Service's Rule 12(b)(1) motion to dismiss Guardians' amended complaint.

Respectfully submitted this 28th day of June, 2018.

/s/ Matthew K. Bishop

17

Matthew K. Bishop
*admitted pro hac vice*


/s/ John R. Mellgren
John R. Mellgren
*admitted pro hac vice*


## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2018, I filed a copy of this document electronically through the CM/ECF system, which caused all ECF registered counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Matthew Bishop
Matthew Bishop