# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WildEarth Guardians, et al., | No. CV-18-00048-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Ryan Zinke, et al., | |
| Defendants. | |

This case is brought by WildEarth Guardians, Western Watersheds Project, New Mexico Wilderness Alliance, and Wildlands Network against Secretary of the Interior Ryan Zinke, the United States Department of the Interior, Acting Director of the United States Fish and Wildlife Service Greg Sheehan, and the United States Fish and Wildlife Service ("FWS").  Plaintiffs challenge the FWS's 2017 recovery plan for the Mexican grey wolf on various grounds.  The Amended Complaint requests that the Court declare (1) that the FWS has violated Section 4(f) of the Endangered Species Act ("ESA"), 16 U.S.C § 1533(f), as well as the Administrative Procedure Act (APA), 5 U.S.C. § 706(2), by issuing the 2017 recovery plan without explaining why the plan substantively departs from a previous draft plan, and that the FWS further violated Section 4(f) by (2) failing to provide site-specific management actions necessary for conservation, (3) failing to provide objective, measurable criteria necessary for delisting the Mexican grey wolf, and by (4) failing overall to utilize the best available science to ensure conservation of the wolves. The Amended Complaint requests that the Court remand this matter back to the FWS to

amend the recovery plan in compliance with the ESA.

Pending before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction. (Doc. 24.) Defendants argue that neither the citizen suit provision of the ESA nor the APA provide a basis for jurisdiction over the claims alleged in the Amended Complaint. For the reasons stated herein, this Court will grant the motion in part.

## I. BACKGROUND

Congress enacted the ESA to protect and conserve endangered species. 16 U.S.C. § 1531(b). The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 180 (1978). The Supreme Court has stated that "beyond doubt . . . Congress intended endangered species to be afforded the highest of priorities," and the "plain intent of Congress in enacting [the] statute was to halt and reverse the trend toward species extinction, whatever the cost." *Id.* at 174, 184. "Under the ESA, the Secretary of the Interior . . . must identify endangered species, designate their 'critical habitats,' and develop and implement recovery plans." *Natural Resources Defense Council, Inc. v. United States Dept. of Interior*, 13 Fed. Appx. 612, 615 (9th Cir. 2001). The Secretary's duties under the ESA are delegated to the FWS pursuant to 50 C.F.R. § 402.01(b).

Section 4(f) of the ESA lays out a directive for the Secretary to "develop and implement [recovery] plans . . . for the conservation and survival" of a species listed as endangered. 16 U.S.C. § 1533(f)(1). In doing so, the Secretary "may procure the services of appropriate public and private agencies and institutions, and other qualified persons." 16 U.S.C. § 1533(f)(2). Each plan must include, "to the maximum extent practicable," a (1) description of site-specific management actions necessary to achieve conservation, (2) objective, measurable criteria that would result in delisting if met, and (3) time and cost estimates to carry out the steps needed to achieve the plan's goals. 16 U.S.C. § 1533(f)(1)(B). Prior to approving a recovery plan, the Secretary must "provide public notice and an opportunity for public review and comment on such plan," and then "consider all information presented during the public comment period prior to approval of the plan."

16 U.S.C. §§ 1533(f)(4), (5).  Finally, in considering whether to remove a species from the endangered list, the Secretary must make his determination solely "on the basis of the best scientific commercial data available to him, after conducting a review of the status of the species[.]" 16 U.S.C. § 1533(b).

At issue here is the FWS's latest recovery plan for the Mexican grey wolf.  The Mexican grey wolf is native to the American Southwest. (Complaint ¶ 22.) Although the Mexican wolf population once hovered in the thousands, by the 1970s, the wolves were believed to be extinct in the wild. (Complaint ¶¶ 22-23.)  In 1976, the Mexican grey wolf was listed as an endangered subspecies under the ESA, and in 1982, the FWS released what was titled a "Recovery Plan."  (Complaint ¶¶ 24, 26.)  In 2010, the FWS appointed a Mexican Wolf Recovery Team with a Science and Planning Subgroup, and the group ultimately drafted an updated draft recovery plan. (Complaint ¶¶ 35, 41.) This proposed plan was never finalized under Section 4(f). (Complaint ¶ 44.)

Plaintiffs filed suit in 2014 to compel the Secretary of the Interior and FWS to replace the 1982 recovery plan with a new one that would comply with new recovery plan requirements enacted in 1988. (Complaint ¶ 44.)  Congress amended 16 U.S.C. § 1533(f) in 1988 to require that recovery plans incorporate "objective, measurable" delisting criteria. Endangered Species Act Amendments of 1988, Pub. L. No. 100-478, 102 Stat. 2306, 2306-07 (1988).  The Court denied the FWS's motion to dismiss the complaint, concluding that Plaintiffs stated a valid claim alleging that the FWS failed to issue a revised plan that complied with the post-1988 requirements in Section 4(f) of the ESA, 16 U.S.C § 1533(f). *Defs. of Wildlife v. Jewell*, No. CV-14-02472, 2015 WL 11182029 (D. Ariz. Sept. 30, 2015).  As part of the ensuing settlement negotiations, the FWS agreed to prepare the recovery plan now subject to dispute. *Defs. of Wildlife v. Jewell*, No. CV-14-02472, 2016 WL 7852469 (D. Ariz. Oct. 18, 2016).

Plaintiffs allege that Defendants acted in an arbitrary and capricious manner by failing to provide any explanation for its decision not to adopt in the 2017 recovery plan some of the specific criteria set forth in the earlier draft recovery plan created by the

Mexican Wolf Recovery Team. (Complaint ¶¶ 55-59.) Plaintiffs further allege that Defendants have not included a description of site-specific management action necessary to conserve the wolf population or objective, measurable criteria that if met would result in a delisting of the species, and that the recovery plan fails to incorporate the best available science. (Complaint ¶¶ 61-80.)

## II. LEGAL STANDARD

A motion to dismiss for subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). *Savage v. Glendale Union High Sch. Dist. No. 205, Maricopa Cty*, 343 F.3d 1036, 1039-40 (9th Cir. 2001). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). The Court accepts all factual allegations as true and draws all inferences in plaintiffs' favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## III. DISCUSSION

The parties dispute whether the court has jurisdiction to hear Plaintiffs' claims under either of Plaintiffs' asserted bases: the citizen suit provision of the ESA, and the APA.

**A. Differences Between the 2017 and Earlier Draft Plan**

Plaintiffs first allege that Defendants violated the ESA by failing to provide a reasoned explanation for departing from a 2012 draft plan produced by the Mexican Wolf Recovery Team in the 2017 recovery plan produced by the FWS under Section 4's procedural guidelines. (Complaint ¶¶ 55-59). As Defendants note, however, and Plaintiffs do not meaningfully appear to challenge,[1] there is no requirement under Section 4 that a recovery plan must conform to a prior draft, or even consider such a draft. *See* 16 U.S.C § 1533(f) (specifying the required content and procedure for recovery plans under the ESA). This claim is therefore not cognizable under either the ESA or APA.

---

[1] In their response to Defendants' motion to dismiss, Plaintiffs do not specifically respond to Defendants' argument on this claim with any analysis. (Doc. 28.)

**B. Jurisdiction Under the ESA's Citizen Suit Provision for Remaining Claims**

Defendants argue that the citizen suit provision of the ESA does not confer jurisdiction for Plaintiffs' challenge to the recovery plan. Section 11 of the ESA provides that a person may commence a civil suit "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under [Section 4] of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). The "purpose of the particular provision in question is to encourage enforcement [of the ESA] by so-called 'private attorneys general,'" out of a recognition "that the overall subject matter of this legislation is the environment," in which "it is common to think all persons have an interest." *Bennett v. Spear*, 520 U.S. 154, 165 (1997). Although various environmental statutes contain a comparable citizen suit provision, the ESA permits "any person" to commence suit—"an authorization of remarkable breadth when compared with the language Congress ordinarily uses." *Id.* at 164-65. The provision applies both to "actions against the Secretary asserting overenforcement under § 1533" and to "actions against the Secretary asserting underenforcement under § 1533," but is cabined to challenges to the Secretary's nondiscretionary duties. *Id.* at 166, 173.

At issue is whether the allegations in Plaintiffs' complaint challenge a discretionary action or a nondiscretionary duty under Section 4(f). As previously stated, Section 4(f), governing recovery plans, instructs that "[t]he Secretary shall develop and implement plans . . . for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless he finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1). Moreover, "[t]he Secretary, in developing and implementing recovery plans, shall, to the maximum extent practicable . . . incorporate in each plan" three elements:

> (i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;
>
> (ii) objective, measurable criteria which, when met, would result in a

> determination, in accordance with the provisions of this section, that the species be removed from the list; and
>
> (iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

16 U.S.C. § 1533(f)(1)(B). Neither side disputes that the Secretary must implement *a* plan once a species is listed as endangered. *See, e.g.*, *Center for Biological Diversity v. Bureau of Land Mgmt.*, 35 F. Supp. 3d 1137, 1151 (N.D. Cal. 2014). The FWS argues, however, that as long as the recovery plan includes information relevant to the three elements listed in § 1533(f)(1)(B), the substance of the recovery plan is within the agency's discretion and is therefore unreviewable. Plaintiffs respond that a challenge to a recovery plan is reviewable insofar as the plan fails to include site-specific management actions that will actually "achieve the plan's goal for the conservation and survival of the species," or "objective, measurable criteria" that will actually "result in a determination . . . that the species be removed from the list"—both of which plaintiffs allege are nondiscretionary duties.

Few cases address the issue presented here. *See Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d 1338, 1342-43 (D. Or. 2017) ("binding authority on this issue is scant"). For the following reasons, however, the Court is not persuaded that Plaintiffs allege facts maintaining that the FWS has failed to perform a nondiscretionary duty.[2] Two factors inform this Court's review of § 1533(f)—the nature of recovery plans, and the language of the statute.

To begin, many cases in this jurisdiction and elsewhere have emphasized the non-binding nature of recovery plans. As stated by the Ninth Circuit, "Recovery Plans are prepared in accordance with section 1533(f) of the Endangered Species Act for all

---

[2] The court in *Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d 1338, 1343 n.5 (D. Or. 2017) recognized the "confusing interplay . . . between lack of subject matter jurisdiction and failure to state a claim," before concluding that "when addressing this 'hybrid' area of Rule 12(b), the standard procedure is to determine whether a plaintiff has properly stated a claim in order to determine whether the district court has subject-matter jurisdiction."

endangered and threatened species, and while they provide guidance for the conservation of those species, they are not binding authorities." *Conservation Congress v. Finley*, 774 F.3d 611, 614 (9th Cir. 2014). The thrust of this case and others is that the FWS has a duty to put together a recovery plan for an endangered species where doing so would further the conservation of that species, but that the agency is not bound, from that point forward, to follow the recovery plan to the letter should unforeseen circumstances arise. *See Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1141 n.8 (9th Cir. 2015) ("The Endangered Species Act does not mandate compliance with recovery plans for endangered species."); *see also Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 547 (11th Cir. 1996) ("Section 1533(f) makes it plain that recovery plans are for guidance purposes only."); *Friends of Blackwater v. Salazar*, 691 F.3d 428, 434 (D.C. Cir. 2012) ("A plan is a statement of intention, not a contract. If the plan is overtaken by events, then there is no need to change the plan; it may simply be irrelevant.").[3] Relying on these cases, this Court previously found that "[r]ecovery plans do not govern all aspects of recovery under the ESA, but rather are non-binding statements of intention with regards to the agency's long-term goal of conservation." *Ctr. for Biological Diversity v. Jewell*, No. 15-cv-19, 2018 WL 1586651, at *15 n. 14 (D. Ariz. Mar. 31, 2018). "Thus, even if Plaintiffs are correct as a policy matter that citizens should be allowed to challenge the way in which the Secretary incorporates the requirements from § 1533(f)(1)(B) into a recovery plan," *Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d 1338, 1342 (D. Or. 2017), this line of cases undercuts the legal force of recovery plans as well as the purpose of a detailed, substantive review of a plan's content.

The language of § 1533(f) supports a more deferential approach to recovery plans as well. Under § 1533(f)(1), "[t]he Secretary, in developing and implementing recovery plans, shall, *to the maximum extent practicable*," incorporate into the plan the three

---

[3] *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 107-08 (D.D.C. 1995) acknowledged the logic driving some of these cases when it recognized that the FWS was entitled to "some flexibility as it implements [a] recovery plan," in large part because "[b]y the time an exhaustively detailed recovery plan is completed and ready for publication, science or circumstances could have changed and the plan might no longer be suitable."

- 7 -

elements listed under § 1533(f)(1)(B) (emphasis added). Thus, the agency has an obligation to incorporate site-specific management actions, objective and measurable criteria, and time and costs estimates—but the qualification of "to the maximum extent practicable," in conjunction with the recurring description of recovery plans as "roadmaps," suggests that these three elements are not subject to the same level of scrutiny as they might be where an action is taken to put into effect portions of the plan, pursuant to another section of the ESA. *See Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d at 1342 ("That this understanding of § 1533(f)(1)(B) limits the public's ability to challenge the content of recovery plans is undeniable. But it is clear from the statutory text that Congress intended there to be such limitation, at least to some extent."); *Strahan v. Linnon*, 967 F. Supp. 581, 597–98 (D. Mass. 1997) ("While it is true that § 4(f) 'does not permit an agency unbridled discretion,' and 'imposes a clear duty on the agency to fulfill the statutory command to the extent it is feasible or possible' . . . the requirement does not mean that the agency can be forced to include specific measures in its recovery plan."); *see also Ctr. for Biological Diversity v. Jewell*, No. 15-cv-19, 2018 WL 1586651, at *15 ("even if the recovery plan contained all terms promised by Defendants here, there is no guarantee that those terms will protect against the harms that the Court finds presented by the 10(j) rule").

Although this Court is persuaded that the FWS has discretion as to the content of recovery plans, that does not necessarily mean that there are no circumstances under which review of a plan might be appropriate. "A citizen may still bring suit under § 1540(g) when the Secretary fails to incorporate, to the maximum extent possible, one of the requirements from § 1533(f)(1)(B) in a given recovery plan." *Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d at 1342; *see also Grand Canyon Trust v. Norton*, 2006 WL 167560, at *5 ("Defendants fail to argue that it was not 'practicable' to include the estimates in the Recovery Goals, and therefore, they are not excused from this requirement."). Further, the agency is still bound to follow notice and comment and other requisite procedures in drafting a recovery plan, so as to establish that the agency has given its draft plan the proper

degree of consideration. *See Bennett v. Spear*, 520 U.S. at 172 ("It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking."); *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 139 S.Ct. 361, 371 (2018) ("The use of the word 'may' certainly confers discretion on the Secretary. That does not, however, segregate his discretionary decision not to exclude from the procedure mandated by Section 4(b)(2), which directs the Secretary to consider the economic and other impacts of designation when making his exclusion decisions."); *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 108 (D.D.C. 1995) ("A recovery plan that recognizes specific threats to conservation and survival of threatened or endangered species, but fails to recommend corrective action or explain why it is impracticable or unnecessary to recommend such action, would not meet the ESA's standard. Nor would a Plan that completely ignores threats to conservation and survival of a species."). The Secretary is not necessarily obligated, however, to include any one particular suggestion that any given person deems important for species conservation.

The above understanding of a court's proper review of § 1533(f)'s requirements also supports this Court's conclusion that a recovery plan does not have to be based on the "best available science." Section 4(a) lists the criteria that the Secretary shall consider when determining whether a species is endangered or threatened, and commands that the Secretary, concurrent with that decision, designate critical habitat of such species. 16 U.S.C § 1533(a)(1), (3). In doing so, Section 4(b) instructs that the Secretary make such determinations on the basis of the best scientific data available. 16 U.S.C § 1533(b)(1), (2). Likewise, when the Secretary decides whether to remove a species from the endangered species list, the Secretary must use the best available science. 16 U.S.C § 1533(c)(2). Plaintiffs argue that because recovery plans must include objective criteria that would result in the delisting of a species, and because delisting determinations must be based on the best available science, the criteria themselves must be based upon the best available science. Section 4(f), however, unlike its statutory counterparts, does not include a "best available science" mandate. *See Stewart v. Ragland*, 934 F.2d 1033, 1041 (9th Cir.

1991) ("When certain statutory provisions contain a requirement and others do not, we should assume that the legislature intended both the inclusion and the exclusion of the requirement."); *see also Friends of Blackwater v. Salazar*, 691 F.3d 428, 432-34 (distinguishing between delisting criteria and recovery plan criteria). Although the FWS might logically aim to incorporate the best available science where practicable, whether the agency does so or not is a separate inquiry from whether the agency has produced a recovery plan that satisfies Section 4(f).

The remaining allegations in Plaintiffs' Amended Complaint largely dispute the substance of the recovery plan by disagreeing with the FWS's conclusions and scientific underpinnings. In their second count, Plaintiffs allege that the site-specific management actions included in the recovery plan will not further the conservation of the Mexican wolves, and that the action items identified in the plan are inadequate and difficult to monitor. (Amended Complaint, ¶¶ 62-63.) In their third count, Plaintiffs allege that the FWS's criteria "is not objective and is not adequately measurable," and "would not result in a determination that Mexican wolves should be down listed or qualify for delisting due to recovery." (Amended Complaint, ¶¶ 67-68) Finally, in their fourth count, Plaintiffs allege that the FWS failed to utilize the best available science throughout the recovery plan. (Amended Complaint, ¶¶ 75-79.) These allegations are, in essence, disagreements with the FWS's determination as to how to best provide for the conservation and survival of the Mexican gray wolf—which are determinations within the agency's discretion and therefore unreviewable under the ESA's citizen-suit provision.

Plaintiffs further allege that the FWS failed to address all threats to Mexican wolves in its recovery plan. (Amended Complaint, ¶ 69.) To the extent that these allegations are not mere disagreements with conclusions drawn by the agency as to how best to address the threats, but are allegations that the agency failed to address problems that the agency itself identified, without offering an explanation as to why it was not practicable for the agency to do so, these allegations are different from those in the remainder of the complaint. *See Fund for Animals v. Babbitt*, 903 F. Supp. At 108 ("A recovery plan that

recognizes specific threats to conservation and survival of threatened or endangered species, but fails to recommend corrective action or explain why it is impracticable or unnecessary to recommend such action, would not meet the ESA's standard."); *cf. Friends of the Wild Swan, Inc. v. Thorson*, No. 3:16-cv-681, 2017 WL 7310641, at *10 (D. Or. Jan. 5, 2017) ("While this claim references one or two of the items delineated in § 1533(f)(1)(B), it does not allege such items were not addressed in the Plan"). Accepting all factual allegations as true and drawing all inferences in plaintiffs' favor, *Wolfe v. Strankman*, 392 F.3d at 362, this Court has jurisdiction under § 1540(g)(1)(C) to consider challenges to the Secretary's failure to include these items.

**C. Jurisdiction under the APA**

The Court also concludes that Plaintiffs have not stated a claim under the APA. The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Plaintiffs argue that the recovery plan constitutes a "final agency action," whereas Defendants emphasize again that a recovery plan is a guidance document without legal consequences, which may be modified over time.

"For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). As already stated, the Ninth Circuit has concluded that recovery plans "are not binding authorities." *Conservation Congress v. Finley*, 774 F.3d at 614, and that "[t]he Endangered Species Act does not mandate compliance with recovery plans for endangered species." *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d at 1141 n.8. Thus, this Court is not persuaded that recovery plans constitute an agency action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. at 170.[4]

---

[4] Defendants provide as supplemental authority for this proposition *Friends of the Wild Swan v. Inc. v. Director of the U.S. Fish and Wildlife Service*, 745 Fed.Appx. 718, at

- 11 -

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss (Doc. 24) is GRANTED in part and DENIED in part.

Dated this 30th day of March, 2019.

_____
Honorable Jennifer G. Zipps
United States District Judge

---

*721 (9th Cir. 2018).  Although this Court recognizes that the analysis in that court reached the same conclusion, this Court is unable to rely on this unpublished authority.  9th Cir. R. 36-3.